IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.                                                                   20-CR-6052-FPG

SALVATORE LIPPA, II,

        Defendant.

---

## PLEA AGREEMENT

The defendant, SALVATORE LIPPA, II, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I.   THE PLEA AND POSSIBLE SENTENCE

1.   The defendant agrees to waive indictment and to plead guilty to a two-count Information which charges violations of Title 18, United States Code, Section 115(a)(1)(B) (threatening a United States official) for which the maximum possible sentence on each count is a term of 10 years imprisonment, a fine of $250,000, a mandatory $100 special assessment and a term of supervised release of up to 3 years.  The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2.   The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 4 years, without credit for

time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II.   ELEMENTS AND FACTUAL BASIS

3.   The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

> First, that the defendant threatened to assault or murder a United States official; and
>
> Second, that the defendant acted with the intent to impede, intimidate, or interfere with such United States official while he was engaged in the performance of official duties or with intent to retaliate against such United States official on account of the performance of official duties.
>
> The term "United States official" includes a Member of the United States Congress under Title 18, United States Code, Section 115(c)(4).

### FACTUAL BASIS

4.   The defendant and the government agree to the following facts, which form the basis for the entry of the pleas of guilty including relevant conduct:

### Count 1 – Threatening Call to Congressman Adam Schiff (CA)

> a. On or about January 23, 2020, in the Western District of New York, the defendant, SALVATORE LIPPA, II, did threaten to assault and murder Congressman Adam Schiff, a Member of Congress from the 28th Congressional District in California, with the intent to impede, intimidate or interfere with Congressman Schiff while he was engaged in the performance of his official duties, and with intent to retaliate against Congressman Schiff on account of the performance of his official duties.

2

b. Specifically, on or about January 23, 2020 at approximately 8:20 p.m. (EST), the defendant, using his cellular telephone with number (585) 732-2504, called the Washington D.C. office of Congressman Schiff. At the time of the call, the defendant was physically located in Rochester, New York. The defendant left a threatening voicemail message on Congressman Schiff's office phone number, wherein he threatened to assault and murder Congressman Schiff. The defendant stated: "Schiff, Shifty Schiff, you're the biggest fucking scumbag motherfucker who ever lived. I dare you to come, I dare you to come to New York, because I will put a bullet in your fucking forehead. You fucking scumbag piece of shit. You got that? And you can look up my phone number. And you think I'm fucking joking? I'll come to Washington and kill you, you motherfucker."

c. The defendant admits and agrees that these statements constitute threats to assault and murder Congressman Schiff, and that he made these threats with the intent to impede, intimidate, or interfere with Congressman Schiff while he was engaged in the performance of official duties or with the intent to retaliate against Congressman Schiff on account of the performance of his official duties. At the time of the call on January 23, 2020, Congressman Schiff was one of the House managers responsible for presenting and prosecuting the trial of the Articles of Impeachment against President Donald Trump before the United States Senate, and that trial was then occurring before the United States Senate. The defendant later admitted to agents of the United States Capitol Police that he made the threatening call to Congressman Schiff because he was upset about the impeachment proceedings against President Trump.

### Count 2 – Threatening Call to Senator Charles Schumer (NY)

d. On or about February 4, 2020, in the Western District of New York, the defendant, did threaten to assault and murder United States Senator Charles Schumer, a United States Senator from New York, with the intent to impede, intimidate or interfere with Senator Schumer while he was engaged in the performance of his official duties, and with intent to retaliate against Senator Schumer on account of the performance of his official duties.

e. Specifically, on or about February 4, 2020, at approximately 9:21 p.m. (EST), the defendant, using his cellular telephone with number (585) 732-2504, called the Albany, New York office of Senator Schumer. At the time of the call, the defendant was physically located in Rochester, New York. The defendant left a threatening voicemail message on Senator Schumer's office phone number, wherein he threatened to assault and murder Senator Schumer. The defendant stated: "Hey,

      Schumer, you and Nancy Pelosi are two fucking biggest scumbags who ever lived. And let me tell you something, somebody wants to assassinate you, I'm going to be the driver. And he'll shoot you from 200 yards away. I fucking promise you, you fucking totally little fucking democrats scumbag fucks."

    f.    The defendant admits and agrees that these statements constitute threats to assault and murder Senator Schumer, and that he made these threats with the intent to impede, intimidate, or interfere with Senator Schumer while he was engaged in the performance of official duties or with the intent to retaliate against Senator Schumer on account of the performance of his official duties. At the time of the call on February 4, 2020, Senator Schumer was the Minority Leader of the United States Senate, and the Senate was set to vote on the Articles of Impeachment against President Donald Trump brought by the House of Representatives on the next day, February 5, 2020. The defendant later admitted to agents of the United States Capitol Police that he made the threatening call to Senator Schumer because he was upset about the impeachment proceedings against President Trump.

### III.    SENTENCING GUIDELINES

5.    The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

### BASE OFFENSE LEVEL

6.    The government and the defendant agree that Guidelines § 2A6.1(a)(1) applies to the offenses of conviction and provides for a base offense level of 12 for each of Counts 1 and 2.

### U.S.S.G. CHAPTER 3 ADJUSTMENTS

7.    The government and the defendant agree that the following adjustment to the base offense level applies to each of Counts 1 and 2:

    a.    the six-level increase under Guidelines § 3A1.2(b) (victim was a government officer or employee, the offense was motivated by such status, and the applicable Chapter Two guideline is from Chapter Two, Part A.).

4

## ADJUSTED OFFENSE LEVEL

8.  Based on ¶¶ 6 and 7 of this agreement, and Guidelines § 3D1.4, it is the understanding of the government and the defendant that the defendant's combined adjusted offense level is 20.

## ACCEPTANCE OF RESPONSIBILITY

9.  At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of 17.

## CRIMINAL HISTORY CATEGORY

10.  It is the understanding of the government and the defendant that the defendant's criminal history category is I. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the pleas of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

11.  It is the understanding of the government and the defendant that, with a total offense level of 17 and criminal history category of I, the defendant's sentencing range would be a term of imprisonment of 24 to 30 months, a fine of $10,000 to $95,000, and a period of supervised release of 1 to 3 years. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

12. The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above. The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

13. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the pleas of guilty based on the sentence imposed by the Court.

### IV. STATUTE OF LIMITATIONS

14. In the event the defendant's pleas of guilty are withdrawn, or convictions vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty pleas or vacating of the convictions becomes final.

### V. REMOVAL

15. The defendant represents that he is a citizen of the United States. However, if the defendant is not a citizen of the United States, the defendant understands that, if

convicted, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## VI. GOVERNMENT RIGHTS AND OBLIGATIONS

16. The defendant understands that the government has reserved the right to:

   a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

   b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

   c. advocate for a specific sentence consistent with the terms of this agreement including the amount of a fine and the method of payment;

   d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor; and

   e. oppose any application for a downward departure and/or sentence outside the Sentencing Guidelines range made by the defendant.

17. At sentencing, the government will move to dismiss the Criminal Complaint pending against the defendant under Magistrate's No. 20-MJ-529.

18. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VII.  APPEAL RIGHTS

19. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 11, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

20. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

21. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 11, above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VIII. TOTAL AGREEMENT AND AFFIRMATIONS

22. This plea agreement represents the total agreement between the defendant, SALVATORE LIPPA, II, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

JAMES P. KENNEDY, JR.
United States Attorney
Western District of New York

BY: _____
SEAN C. ELDRIDGE
Assistant United States Attorney

Dated: June 4, 2020

I have read this agreement, which consists of 9 pages. I have had a full opportunity to discuss this agreement with my attorney, Steven Slawinski, Esq. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my pleas of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____  _____
SALVATORE LIPPA, II             STEVEN SLAWINSKI, ESQ.
Defendant                       Attorney for the Defendant

Dated: June 4, 2020             Dated: June 4, 2020