UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                                    **20 CR 6052 (FPG)**

     v.                                                                **SENTENCING MEMORANDUM**

SALVATORE LIPPA II,

                   Defendant.
_____


## <u>INTRODUCTION</u>

I represent the defendant, Salvatore Lippa III, in the above-captioned criminal case. I submit this Sentencing Memorandum in support of Mr. Lippa's request for a sentence that is sufficient, but not greater than necessary. Attached to this Memorandum is the following exhibit submitted for the Court's consideration:


     **Exhibit A**: Letters of support from Louis Gangemi and Franklin Wandtke


## <u>PROCEDURAL HISTORY</u>

Salvatore Lippa will be sentenced by this Court on October 1, 2020 at 10:00 a.m. On June 4, 2020, he pleaded guilty to two violations of 18 U.S.C. § 115(a), threatening two members of Congress. In sum and substance, Lippa pleaded guilty to making two phone calls to Representative Adam Schiff and Senator Chuck Schumer during the impeachment proceedings of President Donald Trump. He admittedly had been drinking at the time and left two profane voicemail messages at their offices threatening to kill them. On February 9, 2020, U.S. Capitol

police interviewed Lippa and he admitted making the calls. He was arrested on February 19, but has been on pretrial release with electronic monitoring since his initial appearance that day.

I have reviewed the final August 10, 2020 PSR with Lippa and he has no objections or changes to it. The sentencing guidelines in the plea agreement are identical, with both including an advisory sentencing range of custody of 30-37 months. However, the parties agreed not to be bound by the advisory sentencing guideline range in their recommendations to the Court.

## SENTENCING FACTORS

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the United States Sentencing Guidelines ("USSG") were no longer mandatory. Although the Court must still properly calculate and consider the advisory Guidelines range, the Court may not presume this advisory range is reasonable and need only give this range fair consideration before imposing a sentence. *United States v. Jones*, 531 F.3d 163, 170 (2d Cir. 2008). The advisory Guidelines range now serves as merely an initial benchmark for sentencing, which is ultimately considered along with other 18 U.S.C. § 3553(a) factors. *See Rita v. United States*, 551 U.S. 338 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); *Gall v. United States*, 552 U.S. 38 (2007). The section 3553(a) factors include: the characteristics of the offender and offense; the need for the sentence imposed; the legally available sentences; applicable policy statements of the Sentencing Commission; the need to avoid unwarranted sentencing disparity; and the need to provide restitution, where applicable. Section 3553(a) mandates that any sentence imposed be sufficient, but not greater than necessary to meet the basic goals of sentencing including retribution, deterrence, incapacitation, and rehabilitation.

In *Gall*, the Supreme Court made clear that sentencing courts have great discretion in formulating appropriate sentences. *Gall*, 552 U.S. at 51 (recognizing that the sentencing judge is in the "superior position" to impose a sentence based on the unique facts and circumstances of the case). "[I]n the end, [the Court] must make an 'individualized assessment' of the sentence warranted by § 3553(a) 'based on the facts presented.'" *Jones*, 531 F.3d at 170 (quoting *Gall*, 552 U.S. at 50). In determining an appropriate sentence, 18 U.S.C. § 3553 mandates the Court to impose a sentence that is "sufficient, but not greater than necessary." Therefore, if the district court concludes that either of two sentences would properly serve the statutory purposes of § 3553(a), the lesser sentence must be imposed. *United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006).

Lippa respectfully requests that the Court take the sentencing factors into consideration and sentence him to a probationary, non-custodial sentence.

## HISTORY AND CHARACTERISTICS OF SALVATORE LIPPA

Lippa is sorry and will apologize to the Court at sentencing. He accepts full responsibility for his actions and realizes that he should not have threatened Congressman Schiff or Senator Schumer.

Lippa has a drinking problem. This is evident throughout his PSR and in the way he slurred his words and yelled during the calls that he made. His drinking has been a problem for a long time and helped lead to the dissolution of his family. He has been to rehab twice and previously abused cocaine years ago. He now lives a solitary life with his German Shepherd, Sasha. When he returns home from his job as a construction contractor, he used to sit down and turn on Fox News. In January and February, while President Trump's impeachment trial was in

full swing, he lost his inhibitions and made two angry calls to the people who were prosecuting Trump. This was a grievous decision that he himself made.

Now, Lippa has accepted responsibility for his actions. He pleaded guilty to his offenses early, saving the Court the time, expense and difficulty of conducting a trial during a pandemic. Lippa could have challenged his mens rea at the time of the calls and the case surely would have been decided by a deeply politically divided jury. I thought there was a high likelihood that the jury would not have been able to agree and would have been hung, and so advised my client. Lippa pleaded guilty knowing these things anyway because he is remorseful and wanted to accept responsibility.

The irony here is that President Trump was acquitted at his impeachment trial and is now, as the head of the Executive Branch and the Department of Justice, prosecuting Lippa for threatening his political adversaries.

Lippa does not warrant jail time for this offense. That will not solve anything or provide him rehabilitation. A message of confinement is not necessary for this particular defendant, who has a criminal history category of I. Lippa has learned his lesson, even while the President continues to sow division with provocative statements. The sentencing goal of "general deterrence" in this case will be lost the moment the leader of the United States makes another inflammatory Tweet.

So what should a punishment be for Lippa in this case? He did not even own a gun and did not try to act out these threats in any way. His only crimes were making two intimidating phone calls from his home and it was very easy for the authorities to subsequently track him down. The congressmen were never in any danger from Lippa and it is unclear if the messages were even relayed to them. They have not filed victim impact statements so we do not know how

they feel. It is highly improbable that the calls impacted their work at all during the impeachment trial.

Lippa should be made to atone for his crimes. However, this should involve a sanction that creates a positive in society. Sending Lippa to prison for a term would only exacerbate political division, cost taxpayer money, and not accomplish any 18 U.S.C. § 3553(a) goals. Lippa instead should be sentenced to probation with a community service condition. He is a carpenter and contractor and his skills can be used to build houses for Habitat for Humanity. By doing this, he would be paying his debt to society and acting as an agent of positive change in an underserved community. The Court and Lippa have the power to make a positive out of this unfortunate situation. This punishment would also be in line with the statutory sentencing provisions contained in Paragraph 70 of the PSR.

Lippa should also be given a condition that he participate in substance abuse counseling. This is something that he clearly needs in light of the circumstances of this case. Even his two friends realize this fact as evidenced in their letters (**EXHIBIT A**).

Since he has been on pretrial release, Lippa has adhered to all conditions imposed on him and has been compliant with house arrest and electronic monitoring. Additionally, he has a very good relationship with his probation officer. Lippa has made amends and will allocute at sentencing to apologize on the record to the Court, Senator Schumer, Congressman Schiff, and the law enforcement professionals who worked on this case.

## **CONCLUSION**

For all of the above reasons, Salvatore Lippa would request a sentence of probation with a condition of community service.  This would be a sentence not greater than necessary to

accomplish the § 3553(a) sentencing factors in his case and would allow him to make amends for his actions.

**DATED**: Rochester, New York, September 24, 2020

Respectfully submitted,

Steven Slawinski
Assistant Federal Public Defender
Federal Public Defender's Office
28 E. Main St., Suite 400
Rochester, NY 14614
(585) 263-6201
Steven_slawinski@fd.org
Counsel for Defendant Salvatore Lippa III

**TO:**   Sean Eldridge, Esq.
Assistant United States Attorney

Erin N. Wong
United States Probation Officer

# EXHIBIT A



August 25, 2020

Franklin Wandtke
657 Hawks Nest Circle
Greece, NY. 14626

Dear Mr.Geraci,

I have known Salvatore Lippa for over 15 years, and I'd like to speak on his behalf for his recent inappropriate comments in reference towards two of our current political leaders. Let me say that Mr. Lippa does in fact have an alcohol problem. While in itself, Salvatore did fall victim to the words he uttered but that is not the true Salvatore.

This occurred at a particular difficult time in his life and he allowed his frustrations to overcome him. He has spoken of it numerous times since and each time his remorse grows. He fully understands the magnitude of his ways and deeply regrets having allowed himself to act in such a way. He has said many times he would do anything to turn back the hands of time if he only could. He is so sorry for ever making such a statement and having directed it at two public figures.

It is hoped that perhaps consideration might be granted him with a reduction in the sentence. This is of course a serious offense, but it would seem in excess when considering and comparing it to violations of others for perhaps even greater offenses. I stand on my honor when I say that Mr. Lippa is of a much higher character stature than that he demonstrated at the time of this offense; a fact he has proven to me multiple times in our meetings since.

My role as Location Manager for First Student, (school bus transportation) and managing 275 operators and attendants for over 10 years, has heightened my ability and credibility in defining personalities, sincerity, honesty, and loyalty of individuals. Mr Lippa has proven exemplary qualities in each of these traits and is worthy of any considerations possible.

Respectfully submitted,

Franklin A. Wandtke

## Wandtke, Franklin A

| | |
|---|---|
| **From:** | Louis Gangemi <louiegangemi@gmail.com> |
| **Sent:** | Wednesday, August 26, 2020 9:21 AM |
| **To:** | Wandtke, Franklin A |
| **Subject:** | Fwd: Salvatore Lippa |

> **CAUTION:** This email is from an external source. 'louiegangemi@gmail.com' Please beware of links and attachments.

Sent from my iPhone

Begin forwarded message:

> **From:** Louis Gangemi <louiegangemi@gmail.com>
> **Date:** August 26, 2020 at 8:51:14 AM EDT
> **To:** <stevenslawinski@fd.org>
> **Subject: Salvatore Lippa**
>
> Dear Judge Gerasi
> I'm writing you in regards to the incident involving Salvatore Lippa. I've known Sal over 40 years. Sal is one of the hardest working guys I know. He is a very talented Carpenter. I've had the pleasure of working with him over the years on several lobs. He has taught my son in law the trade in which has lead him to a very good living. My grandson has also worked with him. What I'm getting at is I trust Sal with my family 100%. I don't know of Sal ever having a altercation with anyone. The problem with Sal is the alcohol. He really needs some help .I know first hand my self. I have 22 years now. I personally help Sal with his bills and business decisions and daily routine. I feel in my heart he needs treatment verses incarceration . I'm not trying to tell you your job but He really needs help. The judges involved in my troubled times gave me The option of drug court instead of jail. I took full advantage of the treatment and like I said 22 years Later I've raised a family of 5 and have been successful in family and business. The actions he took on those occasions were totally due to the alcohol. He could have never acted out on those statements made. Sals family has been torn apart due to his drinking. Every one that knows him will tell you what a great guy he is when not drinkIng. Please in your heart try and help him rather than incarcerate him. Treatment and strict monitoring could change his life. Also I just found out that his sister Anita has stage four cancer with no treatment options. Sal has been remodeling her house for months now trying to make her feel better. Besides me she is his only other support network. I stand behind any decision you make but I hope it is a helpful one. Thank you.
>
> Louis Gangemi
>
> Sent from my iPhone

1